THE UNITED STATES COURT OF APPEAL FOR THE FEDERAL COURT CASE IS NOW OPEN AT EXPENSIVE, GOD SAVING UNITED STATES EMBASSY COURT. Be seated, please. Good morning, ladies and gentlemen. We have five cases on the docket this morning, one of which is submitted. The first four are being argued. The first argument today is VISTAN CORPORATION v. FADEI. Did I pronounce that correctly? FADEI. Docket number 13-12-16. I understand that each of you want to reserve five minutes for rebuttal as it relates to the appeal and the respective cross-appeal. Is that correct? Yes, Your Honor. Okay. All right, Mr. McFarland. Good morning. May it please the Court, I'd like to focus on two specific errors that we believe that the District Court committed in granting summary judgment that the defendants do not need to infringe Claims 5 and Claims 12 of the 949 Patent. The first error involves the Claim Limitation Act of Assembly, and specifically as it was construed in the summary judgment order, and the types of actuators that are included in the scope of that means-plus-function claim limitation. Now, the specification discloses three alternative embodiments of that Act of Assembly and the actuator included in it. It's solenoid-driven actuators, pneumatically-driven actuators, and separately mechanical linear actuators. Can I ask you, just to clarify, you're not objecting to the fact that the Court employed a 1-12-6 analysis, correct? Correct, Your Honor. And you're not objecting to the construction to the extent that you believe it existed at the time of the claim construction order? Correct. And that would include all aspects of the structure, the relatively complicated structure that the Court described, is that right? That is correct. Okay, and that includes the timing signal and everything else relating to that structure? Correct. We've made arguments as to those other components of the structure, but the description of those components within the construction, we are not objecting to. Okay, all right. I just wanted to make sure that we had a full sense of exactly what the structure is that we're working with, and it's either one where the Court's language is an or, or should be read to say including, correct? Okay, go ahead. And we believe that the specification clearly indicates that the disjunctive interpretation was correct. There are two places to talk about the active assembly and the types of actuators. The first is column 18, lines 50 to 59. Let me make sure, just to follow up on Judge O'Malley's question, you're not pressing, I mean you actually described four types of actuators in the specification. The fourth type is just a, any other, all other. You're giving up on the all other. In light of the District Court's construction, the specifically disclosed types of actuators are the three, and then that fourth category is not specifically disclosed, so we are not pressing that. So the first place it describes each embodiment includes an actively driven actuator, so that's pneumatically or by solenoid. And so from that place we have two examples of an actively driven actuator, a solenoid or a pneumatic. And then the next place it discusses it is column 20, lines 4 to 23, where it says in preferred embodiments, each actuator, 88, includes a pneumatic cylinder configured to pull or push track 87. So that block 88 is pneumatic cylinder. And it says in other preferred embodiments, each actuator 88 is a mechanical linear actuator configured to pull or push track 87. So it clearly describes them as separate embodiments. Now let me understand something though. The court, and it's hard to, and the court described the general function, which is moving the cam tracks and obviously opening the pitting system or operating the pitting system, but the court also discussed the word active and said active is functional language. So what is it about a mechanical linear actuator that is active in the absence of a power source? Well, each of these actuators have a power source. One of the ordinaries still in the art would understand that a pneumatic cylinder is powered by a pneumatic engine somewhere A solenoid is powered by an electrical source somewhere. The power source in and of itself is not part of this claim limitation. We cited the case, they gave the example of a toaster. You can have a patent that is drawn to the mechanism of the toaster. It operates based on the electrical power of the toaster, but the actual electrical power, the power source is not part of the claim limitation itself. And so the same applies here. You have a mechanical linear actuator that is driven by a power source, a motor. Also the solenoid is driven by a power source. The pneumatic is driven by a power source of an electric, of an air engine somewhere, a pneumatic engine somewhere. And so that power source is not strictly within that claim limitation. And so the idea of an active assembly in the prior art models, the pockets were opened and closed as the mechanism moved by cam tracks and differently shaped cam tracks would open and close the pockets. The idea of an actively driven actuator means that the pockets are open and closed by the mechanism of one of these three actuators. And so we believe that the three disclosed embodiments within the specification are clearly described in the disjunctive and that the claim construction should also be a disjunctive. Now if the court agrees with that construction, then there's no basis for the district court summary judgment. The district court assumed that there were mechanical linear actuators within the accused devices. And so if that disjunctive claim construction is correct, then we've got enough to overcome summary judgment. Well, you have a couple arguments that are made in response. One is that even if you accept the proposition that there's a mechanical linear actuator, there still wouldn't be infringement because there's nothing linear about the accused devices. And the linearity of it can be seen very clearly on the exhibit. It's in the appendix A1268. It's a diagram showing what the accused devices are. And the mechanical linear actuator, it consists of that activation rod driven by the second crank, which is the rotary motion that drives it. And then that drives the connector link, which is rigidly connected to the bottom of that lever and into the cam tracks. And so it moves those cam tracks horizontally. And according to the testimony of the inventor who designed that, the shape of that lever was actually designed to minimize any vertical motion. It moves one half inch horizontally and as low as .0035 inches vertically. And so it's, by any level of design rule, it's almost perfectly horizontal. The magistrate judge did not address that issue, correct? That is correct. He simply assumed that there were mechanical linear actuators in the accused device in granting summary judgment. Well, I mean, the summary judgment is granted on the grounds that mechanical linear actuators are not within the scope of the claim, right? Correct. And all infringement issues were, footnote, the last footnote of the appendix says I'm not addressing any of the infringement issues. Correct. And so then that's where the mechanical linear actuator comes in. You have that linear motion that is actuated by mechanical linear actuator. And so even under the more restrictive construction that the district court put in, we actually also had evidence showing that there was infringement under that more restrictive argument because there is a structural equivalent. And I would like to focus on one bit of evidence. It was from the defendant's expert, Dr. Klopp. And he testified regarding mechanical linear actuators that were in his declaration at A903, the standard handbook of machine design that shows examples of mechanical linear actuators. And again, the power source is not shown in those examples because the power source is not strictly part of the mechanical linear actuator. But the testimony is strictly applicable to the accused hitters. What Dr. Klopp says was that you can take the power source and switch out air as a power source for an electrical power source and it would operate in essentially the same way. And so applying that to the mechanism that's shown in A1268, it shows an electric servo motor. And so what his testimony means is you can take that electric servo motor and substitute a pneumatic motor there and it operates in essentially the same way. I'm going to give you a chance to discuss the one area on your side that I find troublesome and that is your spoliation argument. Given the district court's abuse of discretion standard, how is it an abuse of discretion when what you folks did was accede to a request to delete the pictures and yet you had access to the material, you had witnesses, they could testify. We complied in good faith with their demand that they delete those photographs and we had no notice or information that they were going to describe. Sure, but how is it an abuse of the court's discretion? I mean that's a high standard. At the summary judgment stage we felt that the court did not give that any weight whatsoever and that under the case law we thought that they should have given some weight. If we are to assume that you're right, that mechanical linear actuators are not just part of the claim where they would have to be driven in a solenoid or pneumatic way and they could be driven by some other power source, then what is your response to the court's alternative finding, albeit in a footnote, that if in fact that's the case, the claim is indefinite? For the claim that it's indefinite, I think that the standard for indefinite is given in the Bio Medina case, which is one of the cases principally relied on by the defendant. It says that the specification must contain structure to the claim means and that it's not a high standard. And I think from one ordinary skill in the art, there's structure in the specification, both for the timing system and for the second term, the timing system in the mechanical linear actuator that shows that they are definite from one ordinary skill in the art. As we've said, Professor Bowser is one of ordinary skill in this art. The defendant's expert is a mechanical engineer, but he does not have access or experience in that field of art. The disclosed structure for the mechanical linear actuator is, again, the activation rod. I'm sorry, that's the accused device. But within the context of the active assembly, there's a plethora of actual structure that's disclosed, the cases the defendants relied upon. I guess that's exactly what I'm concerned about, a plethora of structure. When you look at that handbook, there's all kinds of things that could constitute a mechanical linear actuator. Are you familiar with our Blackboard decision where the court specifically said the mere fact that you could figure out how to do it is not enough when you're in a 112-6 context? It's the difference between going into a parts store and saying, I'd like a device that can turn off the lights and figure out what that is. Can you design it for me? Oh, I'd like to buy a switch. Here, in terms of what they bought, in terms of the servo motor, in terms of the timing system, that's an off-the-shelf timing system. They've gone in and bought an off-the-shelf timing system just as in Buddy. The Buddy case says that a commercially available vacuum sensor didn't disclose what that was. It's known to one of ordinary skill in the art, but they could determine what that was. They could go buy one off-the-shelf. That's what we have here. If you're moving into the timing system as opposed to off of the mechanical linear actuator, the timing system, all you say is it can be internally generated or externally generated, and there's lots of stuff out there. That's how broad you are. It's not that you said you could go in and buy a commercially available X. You just said you can go in and buy X, Y, Z, or D. For the mechanical linear actuator, it's a known structure, as is shown in Professor Klopp's exhibit, that changes rotary motion to linear motion. That is a known structure. Just like an actuator is a known structure, a mechanical linear actuator is a much narrower classification of structures than just overall actuator. It's actually much more specific than what an actuator would be. What about the timing system and the signal system? The timing system and the signal system, again, is a category of devices, as Professor Bowser testified to, that's well known to those of ordinary skill in the art. The other side's experts said it could be anything, basically the fuse off of a hand grenade, a dashpot, a lighted fuse, an escapement. But one of ordinary skill in this art knows that those specific devices are not used within, through processing machinery. So one of ordinary skill in this art knows the types of structures that that is, it's a mechanical linear actuator, they can go identify it, they can buy it, they can pick it off the shelf. I suppose a hand grenade could process your fruit, but only on a one-time basis. All right, you're entering your rebuttal time, I'm afraid, so we'll give you up to four minutes, we'll restore some and give you a little extra in response, to the extent that you need it. Good morning, may it please the Court. My name is Michael Thomas. I represent Defendant Marion McAfee Company and the today's defendants. The District Court's order in the recent summary judgment should be affirmed for at least three independent reasons. Now before I discuss the three reasons why the Court's order should be affirmed, I'd like to step back for just a moment, look at this case from 30,000 feet, and address how it is we got here. We are here addressing plant construction because the patentee, this man, drafted claims with a term, active assembly, which had no... Okay, we understand from your briefs how we got here, and that's why we were just asking precisely what the complaints are. So why don't you tell us what your three things are. Okay, well the ambiguity that plaintiffs have created, which led to the Court's claim construction, the arguments they're now making for a different claim construction, those were waived under the Northern District local rules. This man advocated for a construction that was not means plus function during the claim construction, and in the Northern District we have very specific local rules outlining in great detail disclosures of claim construction, counter-disclosures, depositions and discovery that occurred based on... Now are you saying that the District Court rules would apply in the following way, that if I didn't think that the claim was written in means plus function format, and the District Court found nonetheless that it was means plus function format, that I have no recourse by way of arguing that the District Court, assuming the District Court was right, that the District Court misapplied the 112.6 analysis once he got there? I think under this Court's jurisprudence, particularly digital vending, the recourse... Are you going to tell me yes or no? I'm actually asking for a question of whether that is your argument. Yeah, the argument is that they don't have that recourse to argue a different means plus function. Their recourse is to argue the original claim construction that they preserved on appeal at claim construction before the trial. And so if the District Court rejects their non-112.6 argument, it doesn't matter what the District Court does in handling the 112.6, they have no argument as to, no complaint that they can make to this Court as to the mishandling of the 112.6, other than to say it shouldn't have been... That is our position, as well as to argue the position that they originally advanced at the trial court. Now, the one exception... Let me ask you a couple of questions, too, because I find this disturbing. Two things. One, at page three of your opening brief, of your brief, you say plaintiff and appellant Vistan Corporation holds but does not practice asserted claims in Iran. Why are you telling us it doesn't practice these? Because they represented that they did elsewhere in the papers. That leads me to your claim on page nine, using language like blatant misrepresentation and false assertion, and I find that very disturbing. Have you taken action before the borrower about this kind of conduct? I know you haven't. Don't you think you're obligated to if you believe a fraud has been perpetrated on the court? I don't know that I am. I know it's my obligation to, as an advocate for my client, to bring those misrepresentations to this Court's attention. And, for example, the one referenced on page nine or ten of our opening brief, I looked at it closely. I'm very disturbed by your use of this language in this context. That's quite well taken, John. I understand it. All right. Assuming that we disagree with you on the waiver, because it does feel like the only moving target we had here was the District Court's approach to this case, whether it was right or wrong, it clearly was a moving target that surprised everybody. He didn't ask for a briefing on 112-6, and the at least original construction seems to have had a disjunctive use of grammar. And then he revised that construction. So, assuming we're not on waiver, what are your merits points? Well, number one, the construction was correct. That mechanical linear actuator is a description of what something does, not what it is. That is why there are so many different types of structures. Not a specific classical structure, but a wildly disparate array of potential devices that could, under this definition, fall within the scope of a mechanical linear actuator. But there are many devices, mechanical devices, whose names are a description of what they do. A screwdriver, for example. What does it do? It drives screws. A brake. What does it do? It brakes motion. I don't think that it is unusual at all for mechanical devices to have names that describe their function. And here we have, as I think your opposing counsel pointed out, a page from a standard mechanical engineering handbook that has depicted mechanical linear actuators. And I think there's even a Wikipedia page referenced by one of the experts that describes the devices known as mechanical linear actuators. Why isn't that enough? Actually, all of those references refer to linear actuators, except the Wikipedia reference. But the word mechanical, the critical part is the linear actuator, right? And that's a description of what something does. It's a means for generating linear displacement. What evidence did you introduce below that showed that one skill in the art would be unable to discern the scope of that term? What evidence did we assert below? First of all, we submitted the declaration of Dr. Klopp first. And then second, the evidence below that demonstrates that that is not a known, discreet structure as required under 112 paragraph 6. Which, of course, we're applying 112.2, which means we must particularly and distinctly point out and claim the invention. So the evidence comes in the form of FISTA's own infringement contentions that have morphed and changed throughout the case. At one time, they alleged a single connecting rod, all by itself, was a mechanical linear actuator. That's in their infringement contentions under the local rules, which also have changed in this case in violation of the local rules. That's one piece of evidence. Did the lower court rely on the local rules, on a violation of the local rules, for purposes of its decision? The court did not, because his claim construction did not require him to address the fact that there can still- Do you think it would really be appropriate for us, in the first instance, to interpret the local rules and to apply some strict reading of those local rules when the district court didn't do so? Well, if the district court didn't have an opportunity to do so, and here we have new contentions and it hasn't been addressed, I think this court could, to its own discretion, do that. I've thought about that question myself. I'm not sure I know the answer. Okay. So what about the answer to Judge Wallach's question? He said, what testimony did you proffer? Did you have expert testimony that said that your expert would not understand the class of structures that would fall into the rubric of mechanical linear actuators? Or did he testify that there were thousands of such structures? What did he say? Actually, our expert did not describe what a mechanical linear actuator is. He couldn't do that, so he only described what it was. If I may, Your Honor, this is in Vistan's own brief. This is at Appendix 1109. They say, tellingly, defendant's expert avoids making any dispositive definition of a mechanical linear actuator. He never did describe what it was. How about at 878-879? I believe this is from your expert's declaration. Describing a mechanical linear actuator causes motion between two machine elements when the motion occurs along a straight line. My understanding is that the mechanical linear actuator causes straight line motion, as confirmed by the handbook. That seems to me that he's describing... At minimum, he's not taking issue with the notion that the term mechanical linear actuator would be understandable to a person with skill in the art, correct? I think he is. He's describing only what it does, not what actually... If you ask someone, please go buy me a mechanical linear actuator. He actually testified to this in a later portion of his deposition, at some point, at any rate. If, in fact, one was asked, please go out and get me a mechanical linear actuator. Supposing, instead, the question was, please go out and design me one. Either way... I love that question. Thank you, Your Honor. You're welcome, because I'm looking at the standard handbook of machine design. Either way, you could get a vast array of different types of structures, as opposed to a discrete structure. It's a description of what something does. But that's true of a screwdriver, too. But if I say, go get a screwdriver, I can go to Home Depot and they have a row of screwdrivers. They don't have that for mechanical linear actuators. How do we know? There's nothing in the record that I can find that says that. This is claim construction, and VISTAN has proffered an ambiguous term, active assembly, which is then being construed by the court. The court is unable to ascertain that this is a discrete, particularized structure. None of this court's jurisprudence in Biodino, and ergo, it's not specific enough. If we look, actually, at VISTAN's own position, it says, the court will acknowledge on page 36 of VISTAN's reply brief, they say the following. Both parties' experts testified at length regarding the meaning of both actuator and mechanical linear actuator. Our expert only talked about its function, not what it is structurally. VISTAN's expert, Dr. Bowser, opined that an actuator is an electric, hydraulic, mechanical, pneumatic device, or a combination of these to affect some predetermined linear or rotational motion, and that mechanical linear actuator is an actuator as defined above, that is driven, at least in part, by a mechanical element such as a gear, threaded rod, cam, or crank. And if that definition, that is their definition of mechanical linear actuator. It doesn't even have to be linear, according to them. If you take that and draft it into Judge Sparrow's claim construction, and include that set of structure, then the question becomes, what isn't a mechanical linear actuator? What would be covered by this claim? Everything is covered. And you're right back to the same ambiguity that we started with, with the term active assembly. It's everything under the sun.  That seems to be a bit of an overstatement. Everything under the sun? Well, it's everything under the sun that can actually move mechanical parts in one way or another. How about a magnet? It doesn't sound like it can move mechanical parts. It doesn't sound like a mechanical linear actuator to me. Well, I would submit that solenoids, as well as electrical motors, are occasionally referred to and actually are electromagnets. Well, solenoids are driven by electromagnets, that's true. You're going to have to stop in a minute if you want any rebuttal, but let me ask you this. Both with respect to your issue regarding the timing and the signals, and even to, I guess, a lesser extent with respect to the issue of mechanical linear actuators and whether that's indefinite. Indefinite is a question of law, but it turns on underlying facts. We don't actually have any of those findings by the trial court. Wouldn't it be more appropriate for us to remand if we thought you even had a valid argument to the district court to say, if you're going to go on indefiniteness, we need to know why? I think with respect to the mechanical linear actuator in the conventional timing system, I think the court has the evidence and the record developed, particularly conventional timing systems, and I'm happy to address that now. But the court didn't answer that, didn't even rule on that, did it? That's correct, Your Honor. The court deferred that. He didn't have to reach that question because he found non-imperishable. Okay, so I guess I'm trying to understand to the extent your cross appeal is premised on that. There's no judgment below. He didn't say it was definite. He just didn't say it was indefinite on that ground, right? That's correct, Your Honor. The trial court didn't rule on that. But having VISTA now proffer to claim construction that includes indefinite terms, both in the form of a timing system as well as a canceled linear actuator, we believe it's right now for this court to invalidate this claim. And the final point I would make is that there actually is no evidence here of a timing system and a control signal as required by the court to claim construction in the accused infringing device. So that's an independent basis, finding a non-infringing device. But also not ruled on by the district court, right? That's correct, Your Honor. Okay, now you have gone way over. So what we're going to do is we will give you three minutes and we'll give you four minutes. Thank you, Your Honor. Does VISTAN practice this? VISTAN has been in the business. I see what you've got. They do not practice this specific claim. They practice other claims included in this patent. Claim one, specifically. What's your answer to my question about whether if we have any questions regarding indefiniteness, it should be something that needs to be referred back to the trial court in the first instance for fact-finding? I would not disagree with that. I think that there is some evidence in the record that it was not the subject of the trial court's decision. I think there is sufficient evidence in the record to show that these are not indefinite. The mechanical linear actuator was discussed by both experts. Both experts could describe it, could point to textbooks that showed what it is, showed what the structure was. And so I think there is sufficient evidence in the record to show that it is not indefinite. And what's the evidence in the record to show that there's actual timing, that the accused devices respond to a timing signal? There's two bits of what the timing signal is saying to be internally generated or externally generated. And so in terms of a classical mechanical control signal, the motion of the actuator on itself can be considered that control signal. And then alternatively, in our infringement contentions on the motion, we've said that the control signal is coming out of the servo drive. The drive, the timing crank, are the control signals. And so there's evidence that that control signal is indefinite. But your principal argument is, the one you just reiterated or iterated first, is that control signal does not need to be an electric control signal. It can be a mechanical signal that is a bump on a rotating shaft or something like that. Correct. Even though it's not readily adjustable. Correct. And your opposing counsel in his brief says, well, adjustability is an important aspect of that. And therefore, that's why your type of control signal is not – your mechanical control signal is not within the scope of the claims. Well, the adjustability is not within the claim. It just says it has to move within synchronism with the other devices. It doesn't say that that synchronism has to be adjustable or you can make it slower, faster, or change it. It just says it's in synchrony. And so with that mechanical signal, that is in synchrony. And I suppose it is adjustable by shifting the machine. It's adjustable by shifting the machine. Correct. And just to revive what my colleague and my opposing colleague has said, we do not believe there's been any waiver. Every argument we've made on the appeal we've made virtually word for word in opposing the summary judgment. And in terms of the mechanical linear actuator, you can buy one. We submitted – it's a 2136, 2137 catalog that shows various mechanical linear actuators that you can buy. And I think that, in conjunction with the case books that show you what a mechanical linear actuator is, it's not a single known structure. But it is a defined category of structures that under cases like Buddy is sufficiently definite to support a means plus function claim under 112 paragraph 6. And again, it's not an unbounded claim. It's not a magnet. It's a mechanical device as opposed to an electronic or air compressor. It's a compression. It's a narrow category of devices. Actuator is a broad category. Mechanical linear or mechanical actuator is a narrower category. And mechanical linear actuator is even a narrower class than that. And so there are cases that we've cited that say an actuator in and of itself is a distinct structure. And it's a mechanical linear actuator is narrower and more defined and less indefinite even than actuator. Okay. Your time is up. I'm sorry. Okay. All right. Mr. Thomas. Of course, I'll leave my comments to the conditional prosecutor. The indefiniteness arguments apply both to the term mechanical linear actuator if it's read to be an independent corresponding structure, as well as the term conventional timing system generating control signals in any number of well-known ways. The testimony from this man's own expert, Dr. Bowser, is that that conventional timing system can include a range of structures, including an integrated circuit, 555 timer chip, solid-state integrated circuit. No moving parts whatsoever. He said that in his declaration. Did the court construe those terms? The court construed the active assembly term to include requirement, the timing system. Okay. But did the court construe signal or timing system? In a sense, I think the court did because he included timing control signal within the claim construction, the corresponding structure. And the question then becomes, well, what does control signal mean? And the court went out of its way in its claim construction order to provide the context of what that means. And that's on A28, where the court specifically said that control signals are generated by a timing system operating in synchronism with both the cyclical motion of the holder conveyor and the cyclical motion of the pinning knife assembly, so as to be useful to cause the operators to open briefly and then reclose the holders of the pockets. And then this is critical. The court italicized at appropriate times during the pitting cycle. So I believe the court did, in its claim construction order, make clear that these control signals aren't just any control signals. They're ones that are useful to cause the pockets to open and close depending on where the position of the knife is moving in the up and down direction. And you can't—that'd be arguing non-infringement. I don't want to necessarily do that. I would like to answer your question. But that's what the court did with respect to control signals. And the testimony from Dr. Bowser is that that timing system and the control signals associated with them can be anything from a rotating metal bar connected to a servo motor on the one end and an integrated circuit on the other. And I submit that under this court's jurisprudence in Ergo and Bio Medino and others, that that is too wide and too disparate a group to be sufficient to satisfy the requirement of providing clear notice on what the scope of the claim is when we're under 112 paragraph 6. So that's a violation of 112 paragraph 2. It's not definite. And it's clear in my view, our view, that this is far more indefinite than the claims that were invalidated in Ergo and Bio Medino. All right. Thank you. Thank you.